## William H. Dunphy and others v. The People for the use of Frank Whipple.

*Sheriff: Bond: Execution.* Our constitution (*Art. X.*, § *5*) provides that a sheriff "may be required by law to renew his security from time to time, and in default of giving such security, his office shall be deemed vacant." The statute (*Comp. L.* § *415*) makes it his duty to renew his bond within twenty days after the first day of January in each year, subsequent to that upon which he shall have entered upon the duties of his office, without, however, expressly declaring that the office shall be vacant if he fails in this duty. A sheriff was elected in November, 1866, for a term of two years, commencing the following January:—

*Held,* That it is no defense to an action upon his bond for the failure to return an execution issued November 30, 1867, and returnable the first Tuesday of February then next ensuing, which was delivered to him for collection, that he failed to renew his bond in January, 1868, while he continued nevertheless to act as sheriff.

*Sheriff de facto: Bond.* A sheriff duly elected, who fails to renew his bond as required by law, but continues in office and remains sheriff *de facto*, is in by virtue of his election, and his sureties on his original bond are liable for any breach of his official duty.

DUNPHY *v.* WHIPPLE.

*Constitutional law.* Whether the provision of our constitution cited above, was designed to go further than to authorize the legislature to require new security and to provide by law for treating the office as vacant, should he fail to give it:—*Quære ?*

*Sheriff: Failure to return execution: Measure of damages.* Where it appears in such an action that the sheriff levied the execution upon certain lands as the property of the judgment debtor, and sold it as such, and it was bid in by the judgment creditor; that the sheriff made no return and gave him no certificate of purchase; that the judgment debtor, previous to the levy, had made a transfer of these lands in trust to pay debts, which, however, the judgment creditor claims is void as to him, the measure of damages, at least where the suit in which the excution issued, was begun by attachment, and there is a failure of personal service, is the full amount of the execution.

Where the sheriff fails to return an execution, the debt is assumed to be lost and the execution creditor is *prima facie* entitled to recover of him the full amount; but the sheriff is, nevertheless, allowed to show in defense that the defendant had no property from which the money could be made, however faithfully he had performed his duty. A showing, however, that the judgment debtor had transferred the lands levied on, prior to the levy, where the lands, notwithstanding this transfer, were sold on the execution for the amount of the debt, does not make out this defense.

*Execution creditor bidding in lands on execution sale.* It cannot be said, in defense to such an action, where the execution creditor bid in the lands himself on the sale, that the damages sustained by him were sustained in his character as purchaser and not as execution creditor.

*Heard April 16. Decided April 23.*

Error to St. Clair Circuit.

This action was brought by Frank Whipple, in the name of the People, against William H. Dunphy, former sheriff, and Daniel H. Cole, Anson S. Welch, and Albert Staley, his sureties, upon the bond of said Dunphy as sheriff, to recover damages for the failure of said Dunphy, while acting as sheriff, to return an execution. The execution issued upon a judgment obtained in a suit commenced by attachment wherein said Whipple was plaintiff and Joel B. Wheaton was defendant. The attachment was levied on certain lands within the county but the defendant was not found. The sheriff levied the execution upon the same lands which had been attached and proceeded during the life of the execution to advertise and sell the same and they were bid off by, and sold to, said Whipple for the full amount due on the execution. No certificate of this sale was ever delivered to

Whipple or filed in the office of the register of deeds; and the execution was never returned. The cause was tried before the court without a jury, and judgment was rendered in favor of the plaintiff, and the damages assessed at the full amount of the execution and interest. The defendants brought the case to this court on writ of error.

*E. W. Harris* and *Ashley Pond*, for plaintiffs in error.

*Anson E. Chadwick*, for defendant in error.

COOLEY, J.

This was an action upon the bond of Dunphy as sheriff of the county of St. Clair, given December 24, 1866, and conditioned for the faithful performance of his duties as such during his continuance in office by virtue of his election, which took place in November, 1866, for a term of two years, commencing the following January. The breach alleged was the failure to return an execution in favor of Whipple, which was issued November 30, 1867, returnable on the first Tuesday of February, then next ensuing. The first objection to a recovery is that the office of the sheriff became vacant by his failure to renew his bond within twenty days after the first Monday of January, 1868, and consequently he was not in office on the return day of the writ.

The sheriff, it appears, did fail to renew his bond, but he continued to act as sheriff notwithstanding. The constitution provides (*Art. X.*, § *5*) that "he may be required by law to renew his security from time to time, and in default of giving such security his office shall be deemed vacant." The statute (*Comp. L., 1857*, § *415*) made it his duty to renew his bond within twenty days after the first day of January in each year subsequent to that upon which

he shall have entered upon the duties of his office; without,. however, expressly declaring that the office should be vacant if he failed in this duty; and it would not become vacant but for the constitutional provision quoted. There may possibly be a question whether that provision was designed to go further than to authorize the legislature to require new security, and to provide by law for treating the office as vacant should he fail to give it. However that may be, if he continues in office and remains sheriff *de facto*, there can be no doubt, we think, that he is in by virtue of his. election. It is the election, and that alone, which justifies his being treated as any thing but a usurper, and that together with his acting under it constitute the protection of those interested in the official acts performed by him.

It is further objected that the circuit court erred in rendering judgment on the bond for the full amount of Whipple's execution. It appears that the sheriff levied upon certain lands as the property of the judgment debtor, and it was sold as such and bid in by Whipple; but as the sheriff made no return and gave him no certificate of pur-- chase, he was unable to assert his right to the land. It was also shown that previous to the levy the judgment debtor had made a transfer of these lands in trust to pay debts; and this is insisted upon as a sufficient excuse to the sheriff for not perfecting the sale. Whipple, however, claims that as to him the transfer was void.

Where the sheriff fails to return an execution, the debt is assumed to be lost, and the execution creditor is *prima facie* entitled to recover of him the full amount. But the sheriff is nevertheless allowed to make the one excuse for not performing his duty,—that however faithfully he might have endeavored to do so, the effort would have been ineffectual because the defendant had no property from which the money could be made.—*Ledyard v. Jones*, 7 *N. Y.*, 550; *Bank of Rome v. Curtiss*, 1 *Hill*, 276; *Pardee v.*.

*Robertson*, 6 *Hill*, 550; *Bowman v. Cornell*, 39 *Barb.*, 70. The finding in this case that the judgment debtor had transferred the lands is claimed to establish this excuse; but we think the further fact that they were sold on the execution for the amount of the debt effectually disproves it. Whipple had a right, if he saw fit, to contest the validity of the transfer; and as for that purpose he had bid the land in for a sum which satisfied the judgment, it was the duty of the sheriff to give him the proper evidences of his purchase that he might make the contest. The sheriff had no more right to refuse to return his doings on the writ because of any supposed invalidity of the title sold, than he would have had if the purchaser had been a stranger to the writ, who, having paid over the money, was satisfied to rely upon his purchase. As to the sheriff, the execution was satisfied; and he was not concerned with the question whether the purchase would become available or not. It would be absurd to say that the sheriff is excused by the impracticability of collecting the debt when he has already obtained satisfaction of it.

But it is said the damages sustained by Whipple were sustained in his character as purchaser, and not as execution creditor, inasmuch as what he lost was the benefit of his bid. This view is plausible, but we think not sound. When property is sold on an execution, the creditor as such is entitled to what is received to satisfy it. If money is received, as creditor, that is his; if property is bid in in his name, as creditor, his bid satisfies the execution, and in that capacity he is entitled to the evidences of title without the payment of money on his purchase. What he has lost, therefore, he has lost as judgment creditor.

We think the view taken of the case by the circuit judge was correct, and the judgment should be affirmed.

CHRISTIANCY, CH. J., concurred.

DUNPHY v. WHIPPLE.

CAMPBELL, J.

I was at first much impressed with the argument that the failure of the sheriff to return the writ was the only grievance involved, and that the damages would be reduced by the showing concerning the disposal of the property by the judgment debtor. But on reflection I agree in the views expressed by my brother Cooley. There was no personal service of process in the case, and a loss of the levy was a loss of all the advantage of the judgment which could not be enforced against any other property. It is quite clear from the finding that the debtor could not have had any claim enforced against him in any other way than under the transfers of this very property. Those transfers his creditors had a right to assail. As the assignments were in trust for the benefit of creditors, if the property assigned should turn out sufficient to more than pay other creditors, then the surplus would result and belong to the debtor or to those who had succeeded to his rights, and an execution purchaser might have redeemed from the assignment, or assailed it as he saw fit.

The actual value of such a right must of necessity be uncertain, and if, as suggested by my brother Cooley, the sale had been made to a third person, the sheriff would have been accountable for the money. He could not lawfully undo his own sale, and in cases of attachment it is doubtful, at least, whether he could release a levy at all. It is not made under his discretion, but as a legal obligation which he cannot control.

If the judgment creditor in such a case bids off the property, it being the only thing which could ever be reached by the judgment, it is a satisfaction of the judgment, so far as the bid goes, which cannot be undone by the sheriff, and the failure of the sheriff to furnish the cer-

tificate is the same in effect as his failure to pay over the price bid by another. No other property can be reached, if this is lost, without a new suit, or some proceeding on failure of title, and never where there is no personal service. And as the debtor is discharged by a completed sale to a creditor as well as to any one else,—so long as it stands,— it would be practically impossible to get at any less measure of damages than the amount bid, which would not involve great danger of injustice. There is no wrong in holding the wrong-doer to such an account, as he had it entirely in his power to prevent the mischief; and it is impossible to show with certainty that all this damage has not been sustained.

I am not prepared to say that where there is a personal judgment the solvency of the debtor, where there has been no sale completed by certificate, might not be an element to be considered. I confine my opinion to cases like the present.

I concur also in holding the bond a continuing claim against the sureties during the term of office under the election.

GRAVES, J., did not sit in this case.