ROSE BABENDURE, Appellant, v. KENNETH S. BAKER et al., Appellees.

No. 42292.

APRIL 3, 1934.

Shotwell, Monsky, Grodinsky & Vance, Wheeler, Elliott, Shuttleworth & Ingersoll, and Jack W. Marer, for appellant.

Deacon, Sargent, Spangler & Hutchinson, Edward J. McPartland, and George C. Claassen, for appellees.

STEVENS, J.—This action arose out of an automobile collision which occurred on the Lincoln Highway a few miles west of Marshalltown about 8 o'clock a. m. on January 28, 1931. The facts, so far as at this time material disclosed by the record, are as follows:

Appellant resides at Fremont, Nebraska. In pursuance of a prior arrangement between the parties interested, appellant left Fremont on the morning in question about two o'clock in company with her husband, a cousin, and other members of the family. The automobile, a five-passenger Buick sedan, was at the time of the accident

being driven by appellant's husband, Abe Babendure. The automobile was owned by a relative of the driver of the car. Babendure had been driving the automobile from about the time the party left Dunlap. The automobile was proceeding eastward to Chicago. When it arrived at a point near the accident and at a curve in the paved highway, the driver observed another automobile approaching from the east. This was a Whippet car owned by Clyde Baker, who, with his son, the driver of the car, occupied the front seat. Appellant, the cousin who was accompanying the party, and Abe Babendure all occupied the front seat of their car. Others of the party were sitting in the rear.

The testimony on behalf of appellant was that, as the Buick automobile started to go down the grade traveling on the right-hand side of the pavement, the occupants of the front seat saw appellee's car approaching from the east when it was a safe distance away; that, as it approached, it was traveling on the left side of the highway, weaving back and forth; that, in an effort to avoid a collision therewith, the driver of the Buick automobile turned across the highway to the left. The collision resulted. The right front end of each of the automobiles struck. The driver of the Whippet automobile testified that it was astride the two black lines in the center of the pavement at the instant of the collision. The Buick car was stopped on the north side of the pavement near a post in the guard rail which was about three feet from the pavement. The owner of the Whippet car and an occupant of the Buick automobile were killed. Appellant suffered serious injuries.

Testimony tending to show that the pavement was frosty was introduced by both parties. The driver of the west-bound automobile denied that it was weaving from side to side, and testified that he drove at all times on the right-hand, or north, side of the pavement. The course of the Buick automobile across the pavement was shown by the wheel marks thereon. The driver of the west-bound car testified that he put his foot on the brake but was unable to stop the car in time to avoid the collision. The shoulder on the south side of the pavement was approximately five feet in width and was wet. There was no guard rail on the south side of the pavement at the point of the accident. South of the shoulder was a ditch three or four feet deep and seven or eight feet wide.

At the conclusion of all the testimony, the court instructed the jury to return a verdict in favor of the defendant. The motion was

sustained upon the theory that the Buick car was being operated on the wrong side of the pavement at the time of the collision. The place and position of the two automobiles immediately after the accident is not in dispute. Photographs introduced in evidence disclose that each of the automobiles struck on the right front side thereof.

It is the contention of appellant that the driver of the east-bound automobile was confronted with an emergency created by the approach of the west-bound car on the wrong side of the pavement weaving from side to side, and that the driver made the turn to the left in a good-faith effort to avoid a collision with the approaching automobile, and that, in doing so, he was in the exercise of due care. The presence of the Buick automobile on the wrong side of the pavement was *prima facie* evidence of negligence. Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Ryan v. Perry Rendering Works, 215 Iowa 363, 245 N. W. 301; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N. W. 561; Harvey v. Knowles S. & M. Co., 215 Iowa 35, 244 N. W. 660.

Under the foregoing facts, the duty to provide a legal excuse for the presence of the automobile on the left, or wrong, side of the pavement rested upon appellant.

The question is: Was the driver of the Buick car confronted by such an emergency, not of his own making, as excused him from obeying the statute which required him, upon meeting the west-bound automobile, to keep to the right? Both appellant and her husband testified that they saw the automobile approaching from the east, observed the manner and place in which it was being driven, and that the turn to the left was made for the sole purpose, if possible, of avoiding a collision. The speed of the cars was about thirty or thirty-five miles per hour.

The driver of an automobile, when confronted upon a public highway with a sudden emergency, not of his own making, is not bound to exercise the highest degree of care. He must, however, exercise such care as a reasonably careful and prudent person would exercise under similar circumstances. The burden in this case, under the facts disclosed, rested upon appellant to show a legal excuse for the presence of the Buick automobile on the wrong side of the pavement. The question, therefore, is: Was sufficient evidence introduced upon the trial of a sudden emergency confronting the driver of the automobile, which was not of his own making, to justify the sub-

mission to the jury of the issue of a legal excuse? The law applicable to the facts before us has been recently and in many decisions of this court stated and restated. What is said in Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, is sufficient at this point. The facts of this case must be viewed in the light of the situation as it existed immediately before and at the time of the accident. Considered retrospectively and with time for due reflection, it might be that a different course would have been pursued by the driver of the Buick automobile. Little time elapsed between the point where the west-bound car could first be seen by the occupants of the east-bound car and the collision for reflection. The pavement was more or less frosty. One of the witnesses testified that it was covered by a heavy frost. There was a curve in the highway which may have had something to do with the position on the pavement of the respective automobiles. It is not the province of this court to pass upon disputed questions of fact nor to determine the credibility of witnesses. The question here presented would seem to be one of fact rather than of law. This court is of the opinion that an issue was presented for the jury and that the motion for a directed verdict was erroneously sustained. It follows that the judgment must be, and is, reversed.—Reversed.

CLAUSSEN, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.